**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| **JOHN HATCHETT, SANDRA HATCHETT, and JPH CAPITAL LTD,**<br><br>***Plaintiffs*,**<br><br>**v.**<br><br>**WEST TRAVIS COUNTY PUBLIC UTILITY AGENCY, SCOTT ROBERTS in his official capacity as President of the Board of Directors, ROBERT PUGH, in his official capacity as General Manager, and DON WALDEN and WILLIAM GOODWIN, in their individual and official capacities as Board Members,**<br><br>***Defendants*.** | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | **CIVIL ACTION NO. 1:19-CV-00260**<br><br>**JURY DEMANDED** |

## COMPLAINT

John Hatchett, Sandra Hatchett, and JPH Capital LTD, Plaintiffs in the above-captioned civil action, complain of the following causes of action against Defendants, West Travis County Public Utility Agency ("WTCPUA"), Scott Roberts in his official capacity as President of the Board of Directors, Robert Pugh, in his official capacity as General Manager, and Don Walden and William Goodwin, in their individual and official capacities as WTCPUA Board Members (collectively referred to herein as "Defendants"), and allege as follows:

## SUMMARY

1. John Hatchett, Sandra Hatchett, and JPH Capital LLP (collectively referred to as "Hatchett") own land ("Hatchett Property") within the boundaries of Travis County Municipal Utility District No. 22 ("MUD"), which in turn is wholly located within the designated retail water service territory of the WTCPUA. The purpose of the WTCPUA is to provide retail water

and wastewater services, not to regulate land use. Defendants are acting in concert to inhibit or prevent the reasonable development of the Hatchett Property. Plaintiffs are requesting the Court to command the WTCPUA to provide retail water service to the Hatchett Property on a nondiscriminatory basis and similar to other lands within WTCPUA's designated service territory.

## PARTIES

2. Plaintiff John Hatchett is an individual who resides in Travis County, Texas with his residential address located at 17024 Hamilton Pool Road, Austin, TX 78738.

3. Plaintiff Sandra Hatchett is an individual who resides in Travis County, Texas with her residential address located at 17024 Hamilton Pool Road, Austin, TX 78738.

4. Plaintiff JPH Capital LTD ("JPH") is a Texas limited partnership with its offices and principal place of business located in Austin, Texas.

5. Defendant WTCPUA is a political subdivision duly organized and existing under the laws of the State of Texas. Defendant WTCPUA can be served with process through its General Manager Robert Pugh at the WTCPUA Administrative Office located at 12117 Bee Cave Road, Bldg. 3, Ste. 3, Austin, Texas 78738.

6. Defendant Scott Roberts ("Roberts") is being sued in his official capacity as President of the Board of Directors of the WTCPUA and can be served with process at the WTCPUA Administrative Office located at 12117 Bee Cave Road, Bldg. 3, Ste. 3, Austin, Texas 78738.

7. Defendant Robert Pugh ("Pugh") is being sued in his official capacity as General Manager of WTCPUA and can be served with process at the WTCPUA Administrative Office located at 12117 Bee Cave Road, Bldg. 3, Ste. 3, Austin, Texas 78738.

8. Defendant Don Walden ("Walden") is being sued in his individual and official capacity as a member of the Board of Directors of WTCPUA and can be served with process at 813 Sunfish Street, Lakeway, Texas 78734.

9. Defendant William Goodwin ("Goodwin") is being sued in his individual and official capacity as a member of the Board of Directors of WTCPUA and can be served with process at 13504 Byrds Next Drive, Austin, Texas 78738.

## JURISDICTION AND VENUE

10. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 in that the controversy arises under the Constitution, laws, or treaties of the United States. This Court also has jurisdiction under 28 U.S.C. § 1343(a)(3) because this is a civil action "to redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States." This Court has authority to award attorneys' fees pursuant to 42 U.S.C. § 1988. Plaintiffs further invokes the supplemental jurisdiction of this Court under 28 U.S.C. § 1367(a) to hear and adjudicate Plaintiffs' state law claims.

11. Venue is properly vested in this Court pursuant to 28 U.S.C. § 1391(b) because the WTCPUA is located within the judicial district of this Court and the causes of action involve land located within the judicial district of this Court.

## NATURE OF THE ACTION

12. Hatchett has owned the Hatchett Property located in Central Texas for several years. In March 2007, the Lower Colorado River Authority ("LCRA") commenced condemnation proceedings against Hatchett in order to construct water transmission, pumping, and storage facilities on the Hatchett Property as part of its West Travis County Regional

System. The purpose of LCRA's real property acquisition was to acquire land for the construction of water supply facilities required to provide retail water services to undeveloped lands located in western Travis County. The water supply facilities were constructed by LCRA and later conveyed to the WTCPUA.

13. As part of the settlement under which LCRA secured the necessary easement rights from Hatchett, LCRA agreed to reserve forty (40) Living Unit Equivalents ("LUE") of capacity in its system for a five year period. LCRA further agreed that in the event Hatchett desired to purchase LUEs in addition to the 40, "provided there is available capacity in the line," nothing in the agreement would prevent Hatchett from doing so. Hatchett's reasonable investment-backed expectations were to develop the Hatchett Property with multiple houses and commercial establishments that would utilize a potable water supply from the water line and other water system improvements constructed by LCRA within and adjacent to the Hatchett Property.

14. The WTCPUA is a public utility agency created and operating under TEX. LOC. GOV'T CODE § 572 ("Chapter 572"). The participating members of the WTCPUA are the City of Bee Cave, Texas ("Bee Cave"), West Travis County Municipal Utility District No. 5, and Hays County. The WTCPUA is governed by a five-member Board of Directors, two of whom are appointed by Bee Cave, two by Hays County, and one by West Travis County Municipal Utility District No. 5 (Board Members). Defendants Goodwin and Walden were appointed by Bee Cave. The WTCPUA purchased the "West Travis County Regional System" water and wastewater system assets and contractual obligations of the LCRA, including LCRA's obligations to Hatchett, on March 19, 2012, pursuant to an agreement executed January 1, 2012.

Hatchett's reasonable investment-backed expectations were based on the WTCPUA assuming the LCRA service obligations assigned to the WTCPUA.

15. Chapter 572 authorizes a public utility agency, in relevant part, to contract with the public entities creating the agency for the collection, transportation, treatment, or disposal of sewage or the conservation, storage, transportation, treatment, or distribution of water; and to contract with private entities for such services.

16. The participating members of the WTCPUA entered into a "Participation Agreement" effective as of March 19, 2012. The Participation Agreement by its terms provides for water supply and wastewater treatment services to the participants and their customers. The Participation Agreement designates the service territory for each participant and the delivery points at which water will be furnished to each participant. The Hatchett Property is located in the designated retail water service territory of the WTCPUA and its participants as defined in the Participation Agreement.

17. The WTCPUA also adopted a separate "designated retail water service territory" that is set forth in its adopted Tariff. The Hatchett Property is located within the WTCPUA's designated retail water service territory as designated and established under the WTCPUA's adopted Tariff.

18. The WTCPUA has also designated an "Impact Fee Service Territory" purportedly in accordance with Chapter 395. The Impact Fee Service Territory defines the lands from which impact fees will be collected to fund capital improvements required provision of water or wastewater services to new development within that territory. The Hatchett Property is located within the WTCPUA's designated Impact Fee Service Territory for water service.

19. Chapter 572 expressly limits the scope of a public utility agency's authority by providing that the entry "may not engage in any utility business other than the collection, transportation, treatment, or disposal of sewage or the conservation, storage, transportation, treatment or distribution of water for a participating public entity that owns jointly with the agency a facility in this state." TEX. LOC. GOV'T CODE § 572.058(a). Notwithstanding the foregoing limitation of authority, the WTCPUA has adopted policies that impose impervious cover restrictions and limit density of new development as a condition of service.

20. Masonwood Development, Inc. ("Masonwood") has purchased and developed a portion of land previously owned by Hatchett ("Masonwood Tract"). By correspondence dated September 14, 2012, representatives of Masonwood sent correspondence to the WTCPUA in connection with the WTCPUA's then pending capital improvement plan update. In such correspondence, Masonwood informed the WTCPUA that the Hatchett Property and Masonwood Tract would be developed for approximately 1,800 single family residential units and commercial use and requested that the WTCPUA include the proposed development in the update to its land use assumptions and capital improvement plans. WTCPUA Board Members orally stated that the request would be granted. Hatchett's reasonable investment-backed expectations were based in part on these representations.

21. On or about March 4, 2013, Hatchett and Masonwood entered into an Agreement of Purchase and Sale of the Hatchett Property ("Agreement"). The Agreement sets forth a take-down schedule with Masonwood purchasing and developing the Hatchett Property in phases. Due to delays caused by the WTCPUA, the Agreement has been amended several times. According to the terms of the Agreement, Hatchett's compensation for the sale of the Hatchett

Property includes reimbursements from the MUD for infrastructure costs funded by Masonwood as development within the Hatchett Property progresses.

22. On or about May 21, 2013, Masonwood submitted a service extension request ("SER") to WTCPUA formally requesting the extension of water service to the Hatchett Property. The WTCPUA Tariff in effect on the submitted date included the Hatchett Property within the WTCPUA Water Service Area. In addition, the WTCPUA Tariff did not contain density or impervious coverage limitations as a condition of service to the Hatchett Property.

23. The term sheet for the SER was considered by the WTCPUA Board of Directors at its October 17, 2013, meeting. By unanimous vote, the Board approved the term sheet.

24. On or about November 6, 2013, the WTCPUA Board issued a service availability letter to Masonwood, a true and correct copy of which is attached as Exhibit A. The approved SER specifically provides for 1,837 LUEs of service to lands within the MUD. Further, the SER letter provided for Murfee Engineering to perform an engineering analysis to identify the specific improvements to the WTCPUA's water system required for service. No density or impervious coverage limitations were imposed in the 2013 SER Approval. The approval letter anticipated that a municipal utility district would be created to provide wastewater treatment and disposal for the Hatchett Property. Hatchett's reasonable investment-backed expectations were based in part on the approved SER.

25. In October 2013, Masonwood filed a Master Development Plan Application ("MDP") with Travis County for 1,640 single family residential lots in reliance upon the approved SER. The MDP was approved by Travis County on or about March 13, 2014. A true and correct copy of the approved MDP is attached as Exhibit B. Hatchett's reasonable

investment-backed expectations were based, in part, on development of the Hatchett Property in accordance with the approved SER and MDP.

26. At the WTCPUA's Board meeting of November 21, 2013, several members of the public (mostly from Bee Cave) expressed their opposition to development of the Hatchett Property. WTCPUA's Director Murphy stated at that time "that the PUA does not have land use authority and has to look at whether the PUA has the capacity to serve." At this meeting, the Board approved a motion to adopt a policy that "MOU compliance is a standard condition for service for all areas outside the corporate limits of the City of Bee Cave." No explanation was given for excluding the land within the corporate limits of Bee Cave.

27. On November 26, 2013, Bee Cave passed Resolution 2013-07 expressing that the City Council "adamantly objects" to development of the Hatchett Property even though the Hatchett Property is located entirely outside the corporate limits and extraterritorial jurisdiction of Bee Cave. The Resolution authorized Bee Cave's Mayor to send the Resolution to any and all governmental entities with jurisdiction over the development of the Hatchett Property. Upon information and belief, Bee Cave directed its appointed representatives on the WTCPUA Board of Directors to oppose development in accordance with the Resolution. The actions of Defendants at WTCPUA Board meetings have been at the direction of Bee Cave and not as independent WTCPUA Board Members.

28. Shortly thereafter, at the December 19, 2013, Board meeting, Defendant Goodwin (a Bee Cave appointee) made a motion to rescind the SER Approval for the Hatchett Property. It was seconded by the other Bee Cave appointee Director Murphy, but the motion did not pass. Another WTCPUA Board member who was not influenced by Bee Cave stated "that the PUA has a policy that it is not in land use regulation."

29. At the Board's January 9, 2014, meeting, Defendant Goodwin again made a motion to rescind the SER Approval, but it died for lack of a second. The Board approved a motion to amend its Tariff to apply "water quality measures, including the MOU (United States Fish and Wildlife Department – LCRA Memorandum of Understanding), TCEQ OEM's and measures that may be required after an independent consultation with USFWS to apply to applicants within the entire service area except within the city of Bee Cave corporate limits and extra territorial jurisdiction." No explanation was given as to why Bee Cave's territory should be excluded from the water quality regulations.

30. On January 22, 2014 after receipt of the Bee Cave Resolution, the WTCPUA sent correspondence to Masonwood "amending" the prior SER approval stating that the WTCPUA's approval of the Masonwood request for 1,837 LUEs of retail water service for the Hatchett Property was "conditional."

31. On March 31, 2014, Masonwood sent a letter to the WTCPUA requesting that the development of the Hatchett Property be included in the proposed demographic study, land use assumptions, capital improvements plan and impact fee study contemplated by the WTCPUA.

32. On May 2, 2014, Murfee Engineering finalized its engineering report which confirmed the availability of 1,837 LUEs to the Hatchett Property and allocated approximately $8.3 million in system capital improvement costs to Masonwood for the extension of service to the entirety of the Hatchett Property. The policy and practice of WTCPUA has been to approve the provision of service to subdivision developments so long as the developer requesting service agrees to pay for the capital improvements needed to service the proposed development.

33. On August 15, 2014, Murfee Engineering prepared a revised engineering report regarding the extension of service to the Hatchett Property. The Memorandum concluded that

only 800 LUEs of retail water service could be made available in response to "directives from the Board of Directors" of the WTCPUA that capacity availability be determined based on the WTCPUA's then existing capital improvement plan without consideration of any additional capital improvements. Upon information and belief, the Board's direction was triggered by the Bee Cave representatives on the Board and the Bee Cave Resolution. The Memorandum allocated approximately $4.6 million in costs to Masonwood for the 800 LUEs of water service. Of this amount, approximately $2 million in costs were allocated to the costs of a water transmission line that would provide for 100 LUEs of capacity to the Hatchett Property.

34. On March 27, 2014, Hatchett filed a Petition with the Texas Commission on Environmental Quality ("TCEQ") to create the MUD as contemplated by the 2013 SER Approval. The entirety of the Hatchett Property is located within the boundaries of the MUD. The engineering analysis submitted to the TCEQ included water, wastewater, and stormwater drainage that would be sufficient for development of the entirety of the Hatchett Property. Total bond issuance costs in the court of $81,050,000.00 were approved by the TCEQ Project financing estimates were based on a single-family lot development of 1637.

35. On November 10, 2014, Murfee Engineering prepared another Memorandum which allocated approximately $2 million in system upgrade costs to Masonwood for the availability of 700 LUEs in response to Masonwood's request that the $2 million water line associated with 100 LUEs of service be removed from the study.

36. On March 19, 2015, Masonwood and the WTCPUA entered into a "Nonstandard Service Agreement" setting forth the terms and conditions pursuant to which the WTCPUA agreed to furnish 700 LUEs of retail water service to approximately 462 acres of the Hatchett Property, which constitutes the first phase of development within the Hatchett Property. The

March 2015 Agreement did not address the development of the remaining acreage. Development plans for the first phase were approved by Travis County, the sole authority with land use jurisdiction for the Hatchett Property, on February 28, 2017.

37. At the February 19, 2015, WTCPUA Board meeting, the Board unanimously voted to exempt land within Dripping Springs from any water quality or impervious coverage requirements imposed by the WTCPUA as a condition of service to other applicants for service. The Board had previously exempted land within Bee Cave's corporate and extraterritorial jurisdiction boundary from this requirement.

38. On October 28, 2015, the TCEQ approved Hatchett's Petition to create the MUD which encompasses the Hatchett Property. A true and correct copy of the October 28, 2015 TCEQ Order is attached as Exhibit C.

39. By correspondence dated August 1, 2016, the MUD's engineer submitted on behalf of Hatchett and the MUD a new Service Extension Request application to the WTCPUA for 1,137 LUEs (the balance of the water demands required for development of the Hatchett Property that were not approved in Masonwood's SER). On October 3, 2016, the MUD paid $19,000 for the WTCPUA's evaluation of the SER (even though the WTCPUA previously evaluated the same request at Masonwood's expense).

40. Curtis Wilson, WTCPUA Engineer, prepared a Memorandum dated March 16, 2017, identifying the offsite improvements required for the provision of the requested service based on system modeling and staff review. The Memorandum confirmed the availability of the requested capacity for the project based on system modeling and allocated approximately $8 million in capital improvement costs required for the extension of service. The Memorandum

was included within the WTCPUA Board of Directors' meeting packet. A true and correct copy of the Memorandum is attached hereto as Exhibit D.

41. On March 16, 2017, the Board of Directors of the WTCPUA met, considered, and denied the MUD's SER application in its entirety despite the fact that its historical policy was to approve all applications where the developer agreed to pay the necessary capital improvement costs to ensure adequate water capacity. By letter dated March 16, 2017, Curtis Wilson provided notice to the MUD that its SER was denied and that the WTCPUA would not proceed with further review of any SER requests for the Hatchett Property. The MUD's outside counsel, Art Anderson, requested that the WTCPUA specify the reason for its denial in accordance with the requirements of its Tariff. A true and correct copy of Mr. Anderson's letter to the WTCPUA is attached as Exhibit E. On April 24, 2017, Mr. Wilson responded as shown on Exhibit F and stated that the basis of denial is that providing service will exceed the capacity of the water system.

42. By correspondence dated April 27, 2017 (a true and correct copy of which is attached as Exhibit G), Mr. Anderson requested that Mr. Wilson clarify the WTCPUA's denial of the request since the WTCPUA's modeling confirmed the availability of capacity, the MUD does not require capacity for years, and the MUD is willing to fund and construct any required infrastructure improvements required for the extension of water service to the Hatchett Property in accordance with the same policies applicable to other service applications. Mr. Anderson also asked how much capacity less than 1,137 would be made available by WTCPUA. Mr. Wilson failed to answer the request, and Stefanie Albright (WTCPUA attorney) informed Mr. Anderson that a representative of the MUD should present this request to the Board of Directors of the

WTCPUA. Mr. Anderson requested an agenda item at a WTCPUA Board meeting for consideration of the matter, which was denied as shown on Exhibit H.

43. The MUD's general counsel, Anthony Corbett, attended the WTCPUA Board's May 18, 2017, meeting and requested that the Board authorize its staff to clarify the prior denial of the SER application or include the matter as a future agenda item. The Board did not respond to his request. Mr. Corbett then sent the letter attached as Exhibit I, which documents the MUD's understanding that the WTCPUA refused to make any additional service available to the Hatchett Property. The WTCPUA refused to respond to the correspondence.

44. Notwithstanding the Board's assertion that the MUD's SER was denied because of lack of capacity and that the WTCPUA's own engineering consultants and employees confirmed the availability of capacity for the SER, the WTCPUA has subsequently approved multiple applications for service to other new developments from the same water system improvements that would furnish the requested water service to the Hatchett Property. The WTCPUA has also entered into numerous contracts with other developers whereby the developers could fund and/or construct any new improvements required for service. These contract approvals will result in taking additional capacity from the WTCPUA system that could have been provided to the Hatchett Property and the MUD.

45. WTCPUA's Tariff was submitted to the TCEQ on November 17, 2016. It refers to a Water Service Area which includes all of the Hatchett Property. According to § 1.02 of the Tariff, the WTCPUA must provide service in accordance with TEX. WATER CODE § 13. Water service must be provided if within the capacity of the water treatment plant and service "can be practically and economically provided." According to § 2.04(c) of the Tariff, the WTCPUA is required to provide written reasons when it rejects a service request.

46. Service approval by the WTCPUA has always been conditioned upon the applicant agreeing to pay the costs of infrastructure improvements to the WTCPUA system required to extend service to the applicant's property. The Board has refused to provide water service to the Hatchett Property at the request of Bee Cave in order to limit the number of houses that might be built on the Hatchett Property.

47. In this case, the WTCPUA's engineering consultants have produced multiple analyses confirming the availability of an additional 1,137 LUEs to the Hatchett Property subject to the completion of construction of improvements that both Masonwood and the MUD are willing to pay.

48. While the WTCPUA's statutory purpose is to furnish water service to its designated service territory, which includes all lands within the MUD, the WTCPUA Board denied the MUD's and Hatchett's SER. On information and belief, the WTCPUA is seeking to limit the density of development of the Hatchett Property in accordance with the stated opposition of Bee Cave and Defendants Goodwin and Walden. To obtain service, the WTCPUA requires that an applicant limit development to 20% "Impervious Cover." The impervious cover requirement is not imposed on projects within the jurisdiction of Bee Cave, and is not imposed on certain projects located outside the jurisdiction of Bee Cave and Dripping Springs. Instead, the WTCPUA arbitrarily imposes the impervious cover restriction on projects that it disfavors as a land use control.

49. On January 18, 2018, the WTCPUA Board adopted new Water and Sewer Service and Development Policies ("2018 Policies"). According to the 2018 Policies, Plaintiffs will be required to comply with impervious coverage requirements of governmental entities other than WTCPUA. These include the federal government, 2000 USFWS Recommendations, alternative

water quality measures approved by the federal government or TCEQ optional enhanced measures ("OEM"). These same requirements are not imposed as a condition of service to property located within the corporate or extraterritorial jurisdiction limits of Bee Cave or the corporate limits of the City of Dripping Springs. Under the WTCPUA's 2018 Policies, developers of property located outside these municipalities are limited to 20% impervious cover for net site areas.

50. There are no legitimate reasons for the WTCPUA to deny or limit service to the Hatchett Property. As a public utility, the WTCPUA cannot discriminate in the provision of service to lands within its designated retail service territory and may not deny water service to control density of development or to prevent development of real property in response to the request of a municipality that has no jurisdiction over the real property.

51. The primary source of revenue for the MUD are ad valorem taxes and wastewater payments by end users within the MUD. Infrastructure has been constructed to serve both the first and second phase of the development. PUA's severely restricting density will cause fewer improvements within the MUD's boundaries and a decrease in the total assessed valuation. Fewer retail customers will also diminish the wastewater service revenues of the MUD.

## CLAIMS FOR RELIEF

### First Cause of Action
### (Denial of Equal Protection)

52. Plaintiffs incorporates the foregoing paragraphs as if fully set forth herein.

53. For the reasons set forth herein, WTCPUA has discriminated against Plaintiffs for no rational purpose and denied Plaintiffs' equal property rights. As a public utility, WTCPUA is prohibited from discriminating among customers. The WTCPUA Board has approved service for competing developments despite its stated reasons for denying Plaintiffs' and the MUD's

SER applications on the grounds that it lacked sufficient capacity. Further, the WTCPUA arbitrarily treats owners of land outside of Bee Cave and Dripping Springs differently than landowners and developers within those jurisdictions. The Board's actions with respect to the Plaintiffs and MUD lack a rational basis and are therefore unauthorized, null, and void. There are no legitimate reasonable reasons for the WTCPUA to deny Plaintiffs' and the MUD's SER applications based upon capacity or serviceability. WTCPUA's actions are arbitrary and capricious and violate the Equal Protection Clause, such Equal Protection being guaranteed to Plaintiffs by Article 1, Section 3 of the Texas Constitution and by the Fifth and Fourteenth Amendments to the United States Constitution.

54. Plaintiffs further seek their actual damages pursuant to 42 U.S.C. § 1983 and attorneys' fees pursuant to 42 U.S.C. § 1988(b) based on Defendants' violation of the Fifth and Fourteenth Amendments of the United States Constitution.

Second Cause of Action
(Denial of Due Process and Due Course)

55. Plaintiffs incorporates the foregoing paragraphs as if fully set forth herein.

56. For the reasons set forth herein, WTCPUA has deprived Hatchett and the MUD of their due process and due course protections under the Fifth and Fourteenth Amendments to the United States Constitution and Article 1, Section 19 of the Texas Constitution. Defendants have used their positions as WTCPUA Board members to further the cause of Bee Cave and its residents at Plaintiffs' expense by imposing illegal density limitations and denying Plaintiffs' SER application. The WTCPUA's development approval process as to the Hatchett Property has been a sham with the ultimate outcome predetermined in advance to limit or prevent the development of the Hatchett Property. The WTCPUA's actions lack a reasonable basis and are arbitrary and capricious.

57. Plaintiffs further seek their actual damages pursuant to 42 U.S.C. § 1983 and attorneys' fees pursuant to 42 U.S.C. § 1988(b) based on Defendants' violation of the Fifth and Fourteenth Amendments of the United States Constitution.

Third Cause of Action
(Inverse Condemnation)

58. Plaintiffs incorporates the foregoing paragraphs as if fully set forth herein.

59. WTCPUA's actions have deprived Hatchett of their reasonable investment-backed expectations and constitute a regulatory taking under both the Texas and United States Constitutions. Plaintiffs are entitled to recover either permanent damages for this taking or temporary damages until the date Plaintiffs are allowed to develop the Hatchett Property in accordance with the Master Development Plan approved by Travis County.

60. Plaintiffs further seek their actual damages pursuant to 42 U.S.C. § 1983 and attorneys' fees pursuant to 42 U.S.C. § 1988(b) based on Defendants' violation of the Fifth and Fourteenth Amendments of the United States Constitution.

Fourth Cause of Action
(Civil Conspiracy)

61. Plaintiffs incorporates the foregoing paragraphs as if fully set forth herein.

62. Defendants Goodman and Walden and certain unnamed individuals are liable for civil conspiracy, as two or more of them have combined to accomplish an unlawful purpose and/or purpose by unlawful means. Despite their conflicts of interest, upon information and belief, Defendants Goodman and Walden have attempted to prevent the development of the Hatchett Property at the direction of Bee Cave's representatives and others. These actions are based solely on politics and not to address the quality of the PUAs water supply system. They have acted outside of their roles as independent Board Members in order to reap political gains at the expense of Plaintiffs.

Fifth Cause of Action
<u>(Chapter 245 Rights)</u>

63. Plaintiffs incorporates the foregoing paragraphs as if fully set forth herein.

64. TEX. LOC. GOV'T CODE § 245.006(a) provides that: "(a) This chapter may be enforced only through mandamus or declaratory or injunctive relief. (b) A political subdivision's immunity from suit is waived in regard to an action under this chapter. (c) A court may award court costs and reasonable and necessary attorney's fees to the prevailing party in an action under this chapter."

65. Pursuant to TEX. LOC. GOV'T CODE § 245.006(a), the Court should declare that the policies, rules, and regulations enacted by Defendants after the first permit for the project on the Hatchett Property was submitted to the WTCPUA cannot legally be applied to Plaintiffs' development project.

66. Plaintiffs further seek their reasonable and necessary attorneys' fees pursuant to TEX. LOC. GOV'T CODE § 245.006(c).

Sixth Cause of Action
<u>Declaratory Relief</u>

67. Plaintiffs incorporates the foregoing paragraphs as if fully set forth herein.

68. Plaintiffs seek a declaratory judgment pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, that the WTCPUA and Defendants lacked the necessary authority to approve the WTCPUA's policies, rules, and regulations (including the 2018 Policies and prior policies) limiting density and impervious coverage. Further, the actions by the Board Members in denying Hatchett's SER application for the Hatchett Property on or about March 16, 2017, are *ultra vires*, unauthorized, and null and void pursuant to Chapter 572. The Board Members' actions are *ultra vires*, unauthorized and null and void in enacting the 2018 Policies and violate the powers given to public utility agency Board Members in Chapter 572.

Defendants' enforcement, application, and implementation of the impervious cover and density requirements on specific developments like the development of the Hatchett Property are *ultra vires*, unauthorized and null and void.

69. Plaintiffs seek a declaratory judgment pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, and as authorized by TEX. LOC. GOV'T CODE § 245.006(a), that the WTCPUA and Defendants' attempts to apply WTCPUA's adverse policies, rules, and regulations enacted after the first permit for the project on the Hatchett Property was submitted to the WTCPUA are unauthorized under TEX. LOC. GOV'T CODE § 245 ("Chapter 245") and are therefore *ultra vires* and null and void. Defendants' denial of Hatchett's SER Application for the Hatchett Property on or about March 16, 2017, is unauthorized under Chapter 245 and is therefore *ultra vires* and null and void.

Seventh Cause of Action
(Injunctive Relief)

70. Plaintiffs incorporates the foregoing paragraphs as if fully set forth herein.

71. Plaintiffs request a preliminary and permanent injunction to enjoin the unlawful actions of Defendants as described herein. A plaintiff seeking a preliminary and permanent injunction must establish: (1) a likelihood of success on the merits; (2) no adequate remedy at law; (3) irreparable harm in the absence of relief; (4) the balance of hardships; (5) and that an injunction is in the public interest. *See Winter v. NRDC, Inc.*, 555 U.S. 7, 20 (2008); *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006).

72. Plaintiffs have a substantial likelihood of succeeding on the merits of this action because WTCPUA and its officers lack authority to prevent the development of the Hatchett Property based upon density.

73. Remedies available at law such as monetary damages are inadequate to compensate Plaintiffs for their injury.

74. Defendants' actions cause and are causing Plaintiffs imminent and irreparable injury that can only be redressed by injunctive action of this Court. Plaintiffs cannot proceed to develop the remaining acreage within the MUD because the WTCPUA has illegally and arbitrarily withheld water service to the Hatchett Property. Moreover, the WTCPUA continues to approve water contracts for other developers thereby eroding the capacity of and further burdening the system available to Plaintiffs. Thus, Plaintiffs' harm cannot be prevented or fully rectified by a final judgment following a trial

75. The factual background plainly demonstrates that the injury that Plaintiffs face outweighs the injury that would be sustained by Defendants as a result of the injunctive relief. Especially considering Plaintiffs have agreed to pay for necessary improvements to the WTCPUA waterworks system in order to ensure the system has sufficient capacity to serve the Hatchett Property.

76. An injunction prohibiting Defendants from continuing its wholly unreasonable and unlawful conduct would not be adverse to the public interest. Rather, such an injunction would be consistent with State law and would allow development of the Hatchett Property to proceed.

77. Accordingly, pursuant to FED. R. CIV. PROC. 65, this Court should issue a preliminary and permanent injunction enjoining Defendants, all officers, agents, and employees of Defendants, and all persons or entities acting in concert with Defendants, from preventing or impeding the approval of the development and water service applications for the Hatchett Property based upon illegal density or maximum impervious coverage requirements and

approving other water supply or service contracts that will siphon away potential capacity required to serve development of the Hatchett Property.

Eighth Cause of Action
(Attorneys' Fees)

78. Plaintiffs incorporates the foregoing paragraphs as if fully set forth herein.

79. Under the authority of 42 USC § 1988, Plaintiffs claim reasonable attorneys' fees, both in the trial of this cause and in connection with any subsequent appeal.

80. Under the authority of TEX. LOC. GOV'T CODE § 245.006(c), Plaintiffs claim reasonable and necessary attorneys' fees.

**JURY TRIAL**

81. Plaintiffs hereby demand a jury trial.

**PRAYER**

WHEREFORE, PREMISES CONSIDERED, Plaintiffs respectfully request as follows:

a. That the Court enjoin WTCPUA from taking any action to prevent and/or delay the approval of the Plaintiffs' or the MUD's SER applications;

b. That the Court enjoin WTCPUA from committing water service capacity to any new applicant for nonstandard service until this controversy is resolved;

c. That the Court make the declarations requested herein;

d. That the Court order declaratory relief as requested by Plaintiffs;

e. That the Court award damages, cost of suit, attorneys' fees and prejudgment and post-judgment interest as provided by law; and

f. That the Court award such other and further relief to which Plaintiffs may be justly entitled.

Respectfully submitted,

WINSTEAD PC
500 Winstead Building
2728 N. Harwood Street
Dallas, Texas 75201
(214) 745-5745 – Phone
(214) 745-5390 – Fax

By: /s/ *Arthur J. Anderson*
Arthur J. Anderson
State Bar No. 01165957
aanderson@winstead.com
James G. Ruiz
State Bar No. 17385860
jruiz@winstead.com

**ATTORNEYS FOR PLAINTIFFS**
**JOHN HATCHETT, SANDRA HATCHETT,**
**and JPH CAPITAL LT**